No. 24-2087

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

United States of America,

Plaintiff-Appellee,

v.

Dimitri McKenzie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the District Court of Massachusetts
The Honorable William G. Young, Judge.
_____

APPELLANT'S BRIEF AND REQUIRED ADDENDUM
_____

Jeremiah R. Newhall
*Attorney for Defendant-Appellant*
Newhall Law Firm
1630 Empire Blvd., Suite 3
Webster, NY 14580
585-865-5441
Jeremiah@newhallfirm.com

Oral Argument Requested

No. 24-2087

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**
_____

**United States of America,**

**Plaintiff-Appellee,**

**v.**

**Dimitri McKenzie,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the District Court of Massachusetts**
**The Honorable William G. Young, Judge.**
_____

DISCLOSURE STATEMENT

The undersigned counsel furnishes the following list in compliance with Circuit Rule 26.1:

1.      The full name of every party or amicus the attorney represents in the case: <u>Dimitri McKenzie.</u>

2.      The names of all law firms whose partners or associates have appeared in the district court, or are expected to appear in this case, for Defendant-Appellant: <u>Law Office of Alyssa Hackett; Sunderland Law LLC; Newhall Firm</u>.

3.      Mr. McKenzie is not a corporation

Dated: : March 26, 2025          <u>  /s/ Jeremiah R. Newhall</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................3

TABLE OF AUTHORITIES ................................................................6

JURISDICTIONAL STATEMENT........................................................8

ISSUES PRESENTED FOR REVIEW ...................................................9

STATEMENT OF THE CASE .............................................................10

I.     The Allegations............................................................................10

II.    Pretrial Litigation ........................................................................12

III.   The Trial.......................................................................................14

SUMMARY OF THE ARGUMENT...................................................21

ARGUMENT......................................................................................23

I.     The court erred in giving an instruction that allowed for a conviction based on recklessness over the defendant's objection....................................23

    A.    Standard of review. .................................................................23

    B.    The court instructed the jury to convict if Mr. McKenzie were reckless of the "fact" of the age of the adult woman in Exhibit 9. .............23

    C.    Instructing the jury to convict if Mr. McKenzie was "reckless" of the adult woman's age was prejudicial error, because sex with an adult while being reckless about the adult's age is not a crime.....................................24

II.    The evidence was insufficient to prove the crime as charged, because the government had to prove the presence of an actual minor when relying on a "reckless" *mens rea*...................................................................30

    A.    Standard of review. .................................................................30

    B.    Because the government relied upon a *mens rea* of recklessness, it was required to prove the presence of an actual minor...............................31

III.   The court erred by refusing to instruct the jury on entrapment..........34

A.     Standard of review. ...................................................................34

B.     Mr. McKenzie met the "modest" burden of producing evidence
sufficient to make the entrapment defense "plausible." ............................34

IV.   The court abused its discretion in excluding defense evidence that was
relevant to the defendant's state of mind, his good character, and his lack of
predisposition. ..................................................................................................40

A.     Standard of review. ...................................................................40

B.     The excluded evidence: Testimony relevant to Mr. McKenzie's
character, reputation, lack of predisposition, lack of attraction to children
or younger women, and his subjective intent. ............................................41

C.     The excluded evidence would have been probative of
Mr. McKenzie's state of mind. .......................................................................41

D.     The excluded evidence would have been probative of
Mr. McKenzie's good character. .....................................................................43

E.     The excluded evidence would have supported an entrapment
defense. ..............................................................................................................46

V.   The court erred in entering a judgment that describes the conviction
as a violation of 18 U.S.C. § 1591(a)(1), rather than a violation of 18 U.S.C.
§ 1594, which erroneously makes Mr. McKenzie ineligible for relief under
the First Step Act. ............................................................................................49

A.     Standard of review. ...................................................................49

B.     The court's judgment should be amended to accurately reflect that
Mr. McKenzie was not convicted of a violation of § 1591 ............................49

C.     Alternatively, this Court should state that the only offense was
under 18 U.S.C. § 1594. ....................................................................................52

CONCLUSION .................................................................................................55

**CERTIFICATE OF COMPLIANCE** ....................................................................56

**APPELLANT'S REQUIRED ADDENDUM** ....................................................57

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 28** ..................58

ADDENDUM TABLE OF CONTENTS .............................................................59

# TABLE OF AUTHORITIES

## Cases

*Borden v. United States*, 593 U.S. 420 (2021) ........................................................33

*Mathews v. United States*, 485 U.S. 58 (1988) ................................................ 36, 47

*Michaelson v. United States*, 335 U.S. 469 (1948) .......................................... 44, 45

*Noe v. True*, No. 21-1373, 2022 U.S. App. LEXIS 27777 (10th Cir. Oct. 5, 2022) ................................................................................................................52

*United States v. Ahmed*, 51 F.4th 12 (1st Cir. 2022) ..............................................51

*United States v. Berk*, 652 F.3d 132 (1st Cir. 2011) ..............................................25

*United States v. Carter*, 15 F.4th 26 (1st Cir. 2021) ....................................... 26, 27

*United States v. Cruz-Ramos*, 987 F.3d 27 (1st Cir. 2021) ....................................42

*United States v. Davis*, 841 F.3d 1253 (11th Cir. 2016) ........................................52

*United States v. Dworken*, 855 F.2d 12 (1st Cir. 1988) .........................................25

*United States v. Fernandez*. 722 F.3d 1 (1st Cir. 2013) ........................... 26, 27, 29

*United States v. Figueroa-Lugo*, 793 F.3d 179 (1st Cir. 2015) ...................... 23, 29

*United States v. Florentino-Rosario*, 19 F.4th 530 (1st Cir. 2021) ......................23

*United States v. Gamache*, 156 F.3d 1 (1st Cir. 1998) ............................. 35, 36, 46

*United States v. Jalbert*, 504 F.2d 892 (1st Cir. 1974) ................................... 44, 46

*United States v. Joost*, 92 F.3d 7 (1st Cir. 1996) ...................................................34

*United States v. Larive*, 794 F.3d 1016 (8th Cir. 2015) .........................................32

*United States v. Navedo-Ramirez*, 781 F.3d 563 (1st Cir. 2015) .........................44

*United States v. Nishniadnidze*, 342 F.3d 6 (1st Cir. 2003) ........................... 36, 40

*United States v. Padilla-Garza*, 990 F.3d 60 (1st Cir 2021) .................................30

*United States v. Pérez-Rodríguez*, 13 F.4th 1 (1st Cir. 2021) ......................passim

*United States v. Phillips*, No. 13-286, 2022 U.S. Dist. LEXIS 218204 (E.D. La. Dec. 5, 2022) ....................................................................................................52

*United States v. Ranney*, 298 F.3d 74 (1st Cir. 2002) ...........................................49

*United States v. Rivera-Sola*, 713 F.2d 866 (1st Cir. 1983) .................................25

*United States v. Rodriguez*, 858 F.2d 809 (1st Cir. 1988) .............................. 34, 35

*United States v. Saemisch*, 18 F.4th 50 (1st Cir. 2021) .................................passim

*United States v. Tunchez*, 772 F. App'x 105 (5th Cir. 2019)................................32

*United States v. Warren*, 5 F.4th 1078 (9th Cir. 2021) ........................... 52, 53, 54

*United States v. Whitney*, 524 F.3d 134 (1st Cir. 2008) ......................................31

*United States v. Wolff*, 796 F.3d 972 (8th Cir. 2015)................................... 31, 32

**Statutes**

18 U.S.C. § 1591............................................................................ passim

18 U.S.C. § 1594............................................................................ passim

18 U.S.C. § 3231.........................................................................................8

18 U.S.C. § 3632................................................................................ 49, 50, 51

18 U.S.C. § 3742.........................................................................................8

**Rules**

Fed. R. Crim. P. 36.....................................................................................52

Fed. R. Evid. 401 ........................................................................................42

Fed. R. Evid. 404 ................................................................................ 44, 45

Fed. R. Evid. 405 ........................................................................................45

# JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this case pursuant to 18 U.S.C. § 3231, which provides exclusive jurisdiction over offenses against the United States. The government filed a criminal complaint against Mr. McKenzie on November 3, 2022. (R. 1.)[1] The grand jury returned an indictment on November 17, 2022, charging Mr. McKenzie with attempted sex trafficking of a child in violation of 18 U.S.C. § 1594(a), with the attempted conduct being a violation of 18 U.S.C. § 1591(a)(1) and (b)(2). (R. 14. App. 17.)

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court imposed sentence and entered a written judgment on November 20, 2024. (R. 106.) Appellant filed the notice of appeal on November 20, 2024. (R. 109, App. 563.)

---

[1] This brief uses the following abbreviations: "R. ___" refers to the docket number in the district court (followed by a page number where applicable); "App. ___" refers to the Appellant's required appendix; "Add. ___" refers to the Appellant's required addendum to the brief.

# ISSUES PRESENTED FOR REVIEW

I.  Whether the court erred by instructing the jury that defendant could "recklessly" intend to commit the offense, because committing the crime recklessly was a legal impossibility.

II.  Whether the evidence was sufficient to convict the defendant of "recklessly" intending sex with a minor, where there was no evidence of an actual minor.

III.  Whether the court erred in denying the request for an entrapment instruction.

IV.  Whether the court abused its discretion in excluding defense evidence regarding the defendant's state of mind, good character, and lack of predisposition to commit the crime.

V.  Whether the court erred in entering a judgment that describes the conviction as a violation of 18 U.S.C. § 1591(a)(1), rather than a violation of 18 U.S.C. § 1594, which erroneously makes Mr. McKenzie ineligible for relief under the First Step Act.

## STATEMENT OF THE CASE

### I.    The Allegations

This is a criminal case involving a government sting. An agent of the Department of Homeland Security, Homeland Security Investigations (HSI) posted an advertisement on a website that is frequently used to arrange for acts of prostitution. (App. 215.) The agent posted pictures of two adults in the advertisement. (App. 219-20.) However, when Mr. McKenzie responded to the ad, undercover agents told him the prostitutes were children aged 12 and 14. (App. 233.) When Mr. McKenzie arrived at the location, he was arrested. (App. 286.)

On November 2, 2022, HSI agent Kristen Draper posted an advertisement on the website "skipthegames.eu", a website that she knew to be used as a place for prostitutes to advertise their availability. (App. 215-16.) Draper included the photos of two people who were over the age of 18 in her advertisement. (App. 219-20.) She used language intended to mimic what she knows to be used in other advertisements. (App. 219-20.) The government agent used photos of an adult woman — tattooed with a nose piercing —and pretended that the adult woman was

a minor. (App. 308.) The adult model was a relative of another HSI agent. (App. 307.)

Dimitri McKenzie replied to the advertisement. (App. 232-33.) Despite using pictures of adult models, the government agent pretended to be a parent offering her children for commercial sex acts. (App. 233.) When the undercover agent stated that the fictitious prostitutes were 12 and 14 years old respectively, Mr. McKenzie stated that he was "not into anything under 18." (App. 234.) Mr. McKenzie and the undercover agent then spent nearly two hours questioning each other on whether they were law enforcement. (App. 234-53.) The agent had the adult relative (who pretended to be 14) create a new photo to prove that she was real, which became trial Exhibit 9. (App. 572.) When Mr. McKenzie did not commit fast enough, the agent taunted that she "don't know if you're for real or just want to talk." (App. 280.)

The agent insisted that if Mr. McKenzie wanted to have sex with the alleged 14-year-old, he was required to bring a condom. (App. 237.)

Mr. McKenzie arrived at the hotel with money but without a condom. (App. 317, 320.) The government arrested him. (R. 320.)

Later analysis of Mr. McKenzie's phone showed that although he had interacted with several prostitutes on various websites, he had never before expressed any interest in sex with minors. (App. 402-01.) The only episode that involved "minors" was the time that he showed up to meet the undercover agent who used photos of adults and lied about offering her minor daughters.

## II.  Pretrial Litigation

Before trial, the parties filed competing evidentiary motions. (R. 59, 60, 64, and 65.) The defense moved to admit evidence of Mr. McKenzie's state of mind in the format of a sermon he gave at his church less than two weeks before the crime. (R. 65, App. 26-27.) In that sermon, Mr. McKenzie talked about the ongoing struggle that he and all Christians face in understanding sin and repentance. (App. 26-27.) He spoke about the struggle with loneliness and how it can be overcome through faith. (App. 26-27.) The defense argued that this insight into Mr. McKenzie's

mind prior to the crime was relevant to his state of mind at the time of the crime. (R. 65.) The defense also proffered that his father would testify as to his opinion of his son's good character, his reputation, and his son's expressed beliefs consistent with Defendant's proffered intent not to engage in the sex act. (R. 65, App. 100-01.) Finally, Mr. McKenzie argued that limited information about the similarity between the federal penalties for child pornography and child trafficking should be admitted because the government agent who had induced his conduct had invoked the former to overcome his reluctance to commit the latter, which amounted to government overreach. (R. 64.)

The government moved to exclude any mention of penalties, to exclude defense evidence that would have shown the absence of predisposition, to exclude evidence of character that was relevant to predisposition, and to prevent any instruction on entrapment. (R. 54, 59, 60, 74.)

On the morning of trial, the court denied the admissibility of the defendant's state-of-mind evidence, and reserved ruling on the penalty information until seeing how the trial developed. (Add. 75-77.)

### III.  The Trial

The government's first witness was agent Draper. (App. 208.) She described the advertisement that HSI posted with the adult models, and she authenticated the text message interaction that she had with Mr. McKenzie, including the portions where each side was asking if the other side was undercover law enforcement. (App. 215, 227-30.) She authenticated recordings of phone calls between herself and Mr. McKenzie. (App. 262.) On cross-examination, Draper explained portions of the hours long back-and-forth in which she was trying to make Mr. McKenzie "feel more comfortable" and "alleviate his concerns." (App. 312.) One of those portions involved the HSI agents telling Mr. McKenzie they would not send pornographic images: "we were specifically saying that we didn't want to send any pictures of the

underage girls" and the language that HSI used was, "That's some federal prison shit." (App. 312-13.)

Upon eliciting this testimony, the defense renewed its motion that the relative similarity of federal child pornography sentences and child trafficking sentences was now relevant to government overreach, because the government agent herself had used the severity of the pornography to induce Mr. McKenzie's action. (App. 313-15.) The defense argued, "I would like to ask for a limited question suggesting that the penalties for child pornography are similar to the penalties for this crime." (App. 313.) The relevance was that "through [the] entrapment argument, [the defense] would like to argue that the government improperly induced the commission of the crime in part by minimizing the significance of the crime." (App. 313.) The court sustained the government's objection. (App. 313-14.)

The government also called HSI agent Andrew Kelleher. (App. 341.) He testified about his forensic examination of the iPhone. (App. 344-45.) In addition to basic phone information, Kelleher authenticated evidence that

showed the text communication between Mr. McKenzie and agent Draper, along with remnants of multiple interactions between Mr. McKenzie and adult escorts on various websites known to host prostitution advertisements. (App. 345.) On cross-examination, Kelleher conceded that his forensic analysis of the iPhone showed no sexualized photos of minors and no messages that involved the sexualization of minors, other than the single interaction induced by the undercover operation. (App. 402-01.)

The government rested. (App. 404.) The defense made a motion for a judgment of acquittal, which the court denied. (App. 404.)

The defense case consisted only of Mr. McKenzie testifying on his own behalf. (App. 404.) He testified that when he first clicked on the HSI undercover advertisement, he believed the advertisement to be for adult prostitutes. (App. 413-14.) He testified that when he received the same-day photo of the adult model, Exhibit 9, he became convinced that the model was probably an adult about the same age as him or a little younger, given her tattoos and a nose piercing. (App. 417-18, 465-66.)  He

therefore agreed to meet, thinking that the purported mother was pimping out her adult daughter. (R. 417-18.) He brought money, which the defense argued was necessary because the mother would not let him see the daughter if he did not have money in hand. (App. 499-500.) And, in fact, Draper had also testified that she insisted on seeing money before divulging the location of the daughter. (App. 317, 320.) But Mr. McKenzie did not bring the condom that would have been necessary for him to have sex with the daughter. (App. 317, 320.)

After the evidence was in, the defense renewed its Rule 29 motion. (App. 478.) The court denied it. (App. 479.) The court also denied the defense motion for an entrapment instruction and overruled the defense objection to the use of "reckless disregard" as the *mens rea* relevant to the person's age. (App. 478-79.) The parties made their closing arguments, and the court instructed the jury. The court gave a partial instruction on entrapment, which told the jury that the government was not allowed to— and had not—entrapped the defendant. (App. 519-20.) In the court's words: "they [the government] can't engage in persuading people who

otherwise wouldn't commit the crime to commit crimes. […] And so there's been significant evidence here that the government wasn't doing that." (App. 520.) After the court instructed the jury, but before they began deliberations, the defense renewed its objections to the absence of an entrapment instruction, and to the instruction on a "reckless" *mens rea*. (App. 527-29) The court denied the objections. (App. 529.)

While the jury was deliberating, the defense filed a renewed written motion for a directed verdict. (R. 81.) The court denied that orally the following morning, and in a minute order. (App. 12.)

The jury deliberated from 12:40 p.m. on Thursday until 12:20 p.m. on Friday. During that time, the jury sent a series of questions. They asked to hear the elements of the crime again. (App. 531.) They asked for a definition of intent and a definition of a substantial step. (App. 533-39.) And they asked for certain portions of testimony to be transcribed and repeated to them. (App. 539.) Beginning on Friday morning, the jury reported they were deadlocked. (App. 547.) After an *Allen* charge, the jury

returned again at 12:20 p.m. informing that they remained deadlocked. (App. 550.)

The court then recalled that one of the jurors had a Saturday morning flight. (App. 551.) The court dismissed the juror. (App. 552-53.) With an alternate sworn in on Monday morning, the jury deliberated for only two hours before returning a guilty verdict. (App. 558-60.)

Before sentencing, the defense requested that the court enter judgment in a way that would make it clear that the crime of conviction was attempted trafficking under 18 U.S.C. § 1594, and not actual sex trafficking under 18 U.S.C. § 1591. (R. 110 21-23, Add. 70.) Erroneously annotating the judgment as being for a conviction under § 1591 would make Mr. McKenzie ineligible for the benefit of the First Step Act, whereas a correct judgment showing conviction for § 1594 would not. (R. 110 21-23, Add. 70.) The court declined to ensure that the judgment only listed the crime of conviction, Section 1594, and instead entered a judgment that lists both §§ 1591 and 1594. (Add. 73, App. 14.) As a result, Mr. McKenzie

has been denied credits available under the First Step Act to defendants

convicted under § 1594.

# SUMMARY OF THE ARGUMENT

The court erred by instructing the jury, over an objection, to convict Mr. McKenzie if he were "reckless" about the age of the adult woman participating in the sting. Consensual sex with an adult, while recklessly disregarding the adult's age, is not a crime. To prove an attempt to violate § 1594, the government had to prove Mr. McKenzie believed the adult was a child.

Alternatively, the court erred in denying the defense motion for judgment of acquittal. Because the government relied upon a "reckless disregard" instruction, it was required to prove the presence of an actual minor. Mr. McKenzie could not be guilty of attempt for "reckless disregard" of a person's age unless the person really was a minor, and the government introduced no evidence of an actual minor.

The court also erred in declining to instruct the jury on the defense's entrapment defense. Mr. McKenzie met the modest burden to introduce an entrapment instruction. The court erred by refusing the instruction as inconsistent with Defendant's testimony, because the instruction is required if the entrapment defense is merely plausible.

In a related error, the court abused its discretion in excluding defense evidence that was relevant to the defendant's predisposition to commit the crime, his good character, his state of mind, and the government's overreach.

Finally, the court erred by entering a judgment that describes the conviction as a violation of 18 U.S.C. § 1591(a)(1) and § 1594, rather than a violation of only 18 U.S.C. § 1594, which erroneously makes Mr. McKenzie ineligible for relief under the First Step Act. Congress specifically carved out § 1594 so that those convicted of attempt crimes would be eligible for the First Step Act.

## ARGUMENT

I.  **The court erred in giving an instruction that allowed for a conviction based on recklessness over the defendant's objection.**

A.  **Standard of review.**

Preserved objections to jury instructions are subject to plenary review. *United States v. Pérez-Rodríguez*, 13 F.4th 1, 16 (1st Cir. 2021); *United States v. Florentino-Rosario*, 19 F.4th 530, 534 (1st Cir. 2021). "A district court's decision to give a particular instruction, over a party's objection, constitutes reversible error only if the instruction was (1) misleading, unduly complicating, or incorrect as a matter of law; and (2) adversely affected the objecting party's substantial rights." *United States v. Figueroa-Lugo*, 793 F.3d 179, 191 (1st Cir. 2015)

B.  **The court instructed the jury to convict if Mr. McKenzie were reckless of the "fact" of the age of the adult woman in Exhibit 9.**

The trial court's relevant instructions on *mens rea* were:

So what they've got to prove beyond a reasonable doubt is that Mr. McKenzie, not what he testified to, but he intended to entice, obtain, patronize, or solicit a person to engage in a commercial sex act.

Second, Mr. McKenzie knew that the object of the commercial sex act was a child who had not obtained the age of 18 years or that he was acting in reckless disregard of whether that person was 18 or not. And so you have in mind -- first of all, he has to have intended sex for money. Now this is only an attempt, because there really wasn't a person here in the room. An attempt to do that. And then the second point is he has got to know or at least genuinely believe that the person who is being offered for the commercial sex act is a minor under the age of 18 years **or he was acting in reckless disregard, he didn't care whether the person was or was not.**

(App. 521.) (bold added). That instruction, to which Mr. McKenzie objected, (App. 528.), was erroneous and requires reversal because it allowed the jury to convict Mr. McKenzie upon proof of innocent conduct.

### C. Instructing the jury to convict if Mr. McKenzie was "reckless" of the adult woman's age was prejudicial error, because sex with an adult while being reckless about the adult's age is not a crime.

Attempting to have sex with an adult while being reckless as to the adult's age is not a crime. But the jury was instructed to convict Mr. McKenzie if he specifically intended to have sex with the woman pictured in Govt Ex. 9 while being reckless about her age. That instruction was error because it created a legal impossibility, and the conviction

24

should be vacated. The correct standard required proof of specific intent to have sex with a minor, not recklessness.

Congress has included "no statutory definition of attempt anywhere in the federal law," so courts must rely upon common law precedent. *United States v. Dworken*, 855 F.2d 12, 16 (1st Cir. 1988), citing *United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir. 1983). This Court's precedent holds attempt requires "proof of two elements: (1) an intent to engage in criminal conduct and (2) conduct constituting a 'substantial step' toward the commission of the substantive offense that strongly corroborates the criminal intent." *Id*. at 17. Conviction for attempting to entice a minor thus requires proof of "both a **specific intent** to commit the substantive offense and a substantial step toward its commission." *United States v. Pérez-Rodríguez*, 13 F.4th 1, 13 (1st Cir. 2021) (interpreting a similar statute, 18 U.S.C. § 2422) citing *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011) (bold added).

In this case, it is undisputed that the Exhibit 9, sent to Mr. McKenzie, was a photo purporting to be of a minor but in fact showed

an adult woman. There is no dispute that this was the only woman with whom Mr. McKenzie sought to have sex.

Applied to this case, then, a correct jury instruction would require the government to prove Mr. McKenzie had the specific intent to have sex with the woman in Exhibit 9 **believing her to be a minor**. Instead, the court instructed the jury to convict if Mr. McKenzie intended to have sex with an adult but was "reckless" about the adult's age. Such an offense is legally impossible.

"[P]ure legal impossibility […] arises when no statute proscribes the result that the defendant expected, desired, and intended to achieve." *United States v. Fernandez*. 722 F.3d 1, 31 (1st Cir. 2013) (Holding that charges were legally impossible.). Pure legal impossibility is always a defense, but factual impossibility is not. *United States v. Carter*, 15 F.4th 26, 36 (1st Cir. 2021). "For example, a hunter cannot be convicted of attempting to shoot a deer if the law does not prohibit shooting deer in the first place," because that is a legal impossibility. *Fernandez*, 722 F.3d at 31. However, if the law *does* prohibit deer hunting, then a hunter that shoots a

decoy *intending* to hit a deer, would be guilty of attempt—which is why factual impossibility is not a defense. *Carter*, 15 F.4th at 36. The test is whether, **if all things were as the defendant believed them to be**, the defendant's intended acts would have violated a statute. *Id.*

If Mr. McKenzie did not *intend* to have sex with someone under 18, but was merely *reckless* in disregarding another person's age, then he cannot have committed the offense charge because there was no woman under 18. The court erred when it instructed the jury to convict Mr. McKenzie if he intended sex with the woman pictured, who was over 18, if he merely recklessly disregarded her age.

The trial court recognized this issue and nearly avoided the error but relented at the government's urging. At the initial conference discussing the jury instructions, the court said, "a real issue here is … is he looking for commercial sex act with an adult, a crime, but not the crime charged … or is he looking for a commercial sex act with a minor …?" (App. 386-87.) The court then said it was persuaded by the defense's suggestion that "we're not going to talk about acting recklessly here, this

is a specific intent crime, he's got to intend that." (App. 387.) When the

prosecutors argued that they really did want to be able to convict on a

standard of recklessness, the court laughed:

> MS. CUMMINGS: Or recklessly disregarded the age of the
> person.
>
> THE COURT: (Laughs.) "Recklessly disregarded the age of
> the person," it being -- **let's say he is seeking sex with an
> adult on this record, if he is, he's not guilty. Do you agree?**
> What's in his mind?
>
> MS. CUMMINGS: Not if he was recklessly disregarding
> **what he was told** about the age of the person he was going
> to have sex with.

(App. 387-88.) (bold added). Unfortunately, after additional briefing, the

court instructed on the prosecution's theory despite correctly stating

earlier that if Mr. McKenzie "is seeking sex with an adult on this record, if

he is, he's not guilty." (*Id.*) It was wrong to do so.

The charge as instructed to the jury was legally impossible without

an actual minor.[2] If any person has consensual sex with a legal adult,

---

[2] Alternatively, assuming the government could convict someone for
attempting to traffic an *actual* minor while being reckless about the minor's
age, it was required to prove the presence of an actual minor. *Infra* Part II.

while being reckless as to the person's age, that is not a crime. Otherwise these laws would capture a host of innocent conduct between consenting youthful adults. That is a legal impossibility, because "no statute proscribes the result that the defendant expected, desired, and intended to achieve." *Fernandez*, 722 F.3d at 31.

The government's argument that Mr. McKenzie could be convicted for recklessly disregarding "what he was told about the age of the person" does not fit the crime of attempt. (June 4 Tr. p. 144.) What matters is not what Mr. McKenzie was told but what he *believed*. If Mr. McKenzie did not believe the woman in Exhibit 9 was a minor, then his conduct was still reckless, but it was not criminal. The court's "recklessness" instruction was "misleading, unduly complicating, [and] incorrect as a matter of law." *See  Figueroa-Lugo*, 793 F.3d at 191.

The instruction also adversely affected Mr. McKenzie rights, because he testified that he believed the person he was meeting was an adult, not a child. (App. 417-18.)  On cross-examination, he said he was unsure. (App.  465-66.)  The jury, if it credited his testimony, could have

believed Mr. McKenzie thought he was probably meeting an adult, but still have convicted him for being reckless. That was prejudicial because no matter how reckless Mr. McKenzie was, if he believed he was meeting an adult, then he did not attempt to commit a federal crime.

## II. The evidence was insufficient to prove the crime as charged, because the government had to prove the presence of an actual minor when relying on a "reckless" *mens rea*.

Alternatively, assuming this Court holds that the instruction was not erroneous, the evidence was insufficient to convict on the crime as instructed. Even if Mr. McKenzie had accomplished the act he was accused of attempting—to engage in a commercial sex transaction with the person depicted in Exhibit 9 while begin reckless about her age—it would not have been a crime under § 1591 because that person was an adult.

### A. Standard of review.

When reviewing a motion for acquittal under Rule 29, this Court credits the government's evidence and takes all facts in the light most favorable to the government. *United States v. Padilla-Garza*, 990 F.3d 60, 70 (1st Cir 2021); *United States v. Maraj*, 947 F.2d 520, 522 (1st Cir. 1991).

Nevertheless, legal questions are reviewed de novo. *Id*. at 73. The adequacy of jury instructions is reviewed de novo. *United States v. Whitney*, 524 F.3d 134, 138 (1st Cir. 2008).

### B. Because the government relied upon a *mens rea* of recklessness, it was required to prove the presence of an actual minor.

As a question of apparent first impression in this Court, this case asks whether a person can be convicted of attempting to traffic minors where there is no minor—wherein attempt normally requires a showing of specific intent—but where the government has relied on a *mens rea* of **recklessness** about "the fact" of the (adult) person's age. As charged to the jury, the government was required to prove the presence of an actual minor because it relied upon a *mens rea* of recklessness. Although this Court appears not to have examined the issue, but the cases cited by the government to the district court (R. 42 3-4) are in agreement with Defendant's rule.

The chief case relied upon by the government was the Eighth Circuit decision in *United States v. Wolff*, 796 F.3d 972 (8th Cir. 2015). In that case,

the court held that proving a violation of § 1591 requires proof of an actual minor. *Wolff*, 796 F.3d at 974. However, proof of an *attempt* to violate § 1591 (under § 1594) requires proof of an intent to traffic or have sex with a minor. *Wolff*, 796 F.3d at 974. "If a jury could reasonably infer that the defendant knowingly sought sexual activity, and knowingly sought it with a minor, then the fact that 'he was mistaken in his knowledge is irrelevant." *Wolff*, 796 F.3d at 974. (cleaned up). *See also United States v. Larive*, 794 F.3d 1016, 1019 (8th Cir. 2015) (Attempt without an actual minor requires proof of Defendant's belief there was a minor.) *Wolff* and *Larive* do not support the government's position that Mr. McKenzie can be convicted for attempting to meet a non-existent minor while being "reckless" about the imaginary minor's age.

If an *actual* minor is involved, however, then the government need only prove recklessness. *See United States v. Tunchez*, 772 F. App'x 105, 106 (5th Cir. 2019) (unpublished) (Affirming conviction for attempt to traffic an actual minor because evidence showed there was an actual minor and defendant recklessly disregarded the minor's age). Thus, given the

government's decision to instruct the jury on a "reckless" *mens rea*, the government's evidence was insufficient as a matter of law.

In this case, because it relied upon a "reckless" *mens rea*, the government was required to prove that Mr. McKenzie had the specific intent to solicit an actual minor, either knowing her to be a minor or being reckless of her age, and knowing that she would be caused to engage in a commercial sex act. The government's proof, however, was that there was no actual minor. The government used pictures of an adult to lure Mr. McKenzie to the hotel. And the government relied upon a *mens rea* of recklessness to permit the jury to convict with less than specific intent to engage in sex with a minor.

As the Supreme Court recently affirmed, the gap between actual knowledge or intent on the one hand and mere recklessness on the other is stark. *See Borden v. United States*, 593 U.S. 420; 141 S. Ct. 1817 (2021) (Holding that recklessness cannot support ACCA predicate because if lacks the level of culpability intended by ACCA). There are important reasons to treat *mens rea* differently when a crime involves a real child

than an imaginary one. A defendant who attempts sexual contact with a real minor, while being reckless about her age, threatens real harm. A defendant who seeks sexual contact with an adult or an imaginary person, while being reckless about their age, does not. The government's evidence was insufficient to prove the crime as charged, and judgment of acquittal should be entered.

## III. The court erred by refusing to instruct the jury on entrapment.

### A. Standard of review.

Preserved objections to jury instructions are subject to plenary review. *United States v. Pérez-Rodríguez*, 13 F.4th 1, 16 (1st Cir. 2021); *United States v. Joost*, 92 F.3d 7, 12 (1st Cir. 1996).

### B. Mr. McKenzie met the "modest" burden of producing evidence sufficient to make the entrapment defense "plausible."

"The defense of entrapment has two elements: (1) government inducement of the accused to engage in criminal conduct, and (2) the accused's lack of predisposition to engage in such conduct." *United States v. Saemisch*, 18 F.4th 50, 60–61 (1st Cir. 2021), citing *United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir. 1988). The defendant has the "modest

burden of production" to introduce evidence supporting both prongs of the defense and need only "make the entrapment theory plausible or superficially reasonable." *Pérez-Rodríguez*, 13 F.4th at 18–19; *see also United States v. Gamache*, 156 F.3d 1, 9 (1st Cir. 1998). "[T]his is not a very high standard to meet." *Id*. at 19; *see also Gamache*, 156 F.3d at 9. Thus, a defendant must only provide "some" hard evidence which "if believed by a rational juror" would be enough to create reasonable doubt as to guilt. *Rodriguez*, 858 F.2d at 814.

"The district court's assessment of whether the defendant has met this threshold is similar to that of assessing a motion for a judgment of acquittal; that is, the evidence must be viewed in the light most favorable to the defendant." *Saemisch*, 18 F.4th at 62. "An entrapment instruction is *required* if the evidence, viewed in this *charitable* fashion, furnishes an *arguable* basis for application of the proposed rule of law." *Pérez-Rodríguez*, 13 F.4th at 19 (emphasis added); *see also Rodriguez*, 858 F.2d at 814.

The court applied an incorrect legal standard in denying the request for the entrapment defense. At the charge conference immediately before

closing argument, the court stated: "I'm not going to charge on entrapment, his testimony is he didn't commit the crime. It's not that anyone pressured him or overreached, if indeed there's any evidence of that, he didn't commit the crime, and I imagine the defense will so argue, and that's up to the jury. So entrapment plays no role here." (App. 479.) The court's ruling contravened Supreme Court precedent holding that a defendant may pursue inconsistent defenses of both factual innocence and entrapment, even if he testifies. *Mathews v. United States*, 485 U.S. 58, 65, 108 S. Ct. 883, 888 (1988). In making its ruling, the court incorrectly focused only on Mr. McKenzie's testimony and ignored the evidence that supported the entrapment defense. This is a classic error. This Court has long held that in deciding whether to instruct on entrapment "a court may not weigh the evidence, make credibility determinations, or resolve conflicts in the proof." *United States v. Nishniadnidze*, 342 F.3d 6, 17 (1st Cir. 2003), *see also Gamache*, 156 F.3d at 9.

First, for the reasons set forth in more detail below, it was the court's own decisions on the admissibility of the predisposition evidence that

created the evidentiary record that the court would later claim did not support the entrapment defense. *See* Section IV(C) *infra*. But leaving aside the evidence that had been excluded and focusing only on what the evidence *did* show, the court failed to apply this Court's well-established rule that the evidence must be viewed "charitably" in favor of the defense of entrapment, and the instruction may only be refused if there is no "plausible" or "superficially reasonable" basis for it. *Pérez-Rodríguez*, 13 F.4th at 18–19; *Saemisch*, 18 F.4th at 62. Here, the court did not view the entirety of the evidence charitably in the light most favorable to the defense. Rather, the court focused on one aspect of the evidence: Mr. McKenzie's testimony was that he arrived at the hotel without the intent to have sex with a minor.

Yet the government's own evidence provided the "reasonable" basis for the entrapment instruction. Mr. McKenzie's immediate reaction upon first hearing the agent's claim that the adult in the advertisement photo was 14 years old was to say that he wanted nothing to do with anything under 18 years old. (App. 234.) It was only after two hours of ongoing

interaction with the government that he arrived at the hotel. And during

the intervening two hours the government agent had the tattooed and

body-pierced model take *another* photo to prove she was real and texted

that photo to Mr. McKenzie. (App. 572.) Then the government agent

invoked the federal child pornography punishments to equivocate the

two crimes. (App. 312-13.) Later, the government cajoled Mr. McKenzie,

telling him that they had no time for talking, it was time for action.

(App. 279-80.) Yet according to government witnesses, when the

government obtained access to Mr. McKenzie's car and phone, they found

nothing— not a single piece of evidence — that Mr. McKenzie had any

sexual interest in children prior to his two-hour text exchange with the

undercover government agent. (App. 402-01.) Although they extracted

vast data from his cell phone, and learned that he had interacted with

other prostitutes, none of them were underage and none of the

interactions involved talk about minors. ((App. 402-01.) There were no

sexualized photos of minors in his phone, but there were sexualized

photos of adults. ((App. 402-01.) The one and only time that he interacted

with anybody about the sexualization of minors was his single interaction with a single government agent, who was using photos of an adult to get his initial attention.

The court could have easily instructed the jury in a way that was consistent with this Court's precedent. First, the court could have instructed on the elements of the offense. Relevant to the issues on appeal, the question at that stage for the jurors was whether they agreed beyond a reasonable doubt that Mr. McKenzie arrived at the hotel with the intent to meet a 14-year-old for sex, and whether he took a substantial step toward committing that crime. If the jury believed Mr. McKenzie that he was there to help, or was there to have sex with an adult, there was nothing left to consider. But if the jury unanimously agreed that he arrived with the specific intent to have sex with a minor, then (and only then) did the jury need to consider whether his intent to commit the crime was the result of entrapment. The court, declining to follow this Court's rule that evidence should be viewed charitably, took a decidedly uncharitable view: because *some* evidence (Mr. McKenzie's trial testimony) could be viewed as denying

the intent to commit a crime, the court ignored other evidence (the text messages) that showed plausible evidence that the government induced him into the crime contrary to his absence of predisposition. The court improperly weighed the entrapment evidence by considering only one part of it to be credible and ignoring the contrary evidence. *See Nishniadnidze*, 342 F.3d at 17.

A reasonable juror, properly instructed, could have plausibly found entrapment when viewing the evidence in the light most favorable to the defense. On plenary review, the refusal to give an entrapment instruction was error.

## IV. The court abused its discretion in excluding defense evidence that was relevant to the defendant's state of mind, his good character, and his lack of predisposition.

### A. Standard of review.

The decision to exclude proffered evidence is reviewed for abuse of discretion. *Saemisch*, 18 F.4th at 60 –66.

### B.    The excluded evidence: Testimony relevant to Mr. McKenzie's character, reputation, lack of predisposition, lack of attraction to children or younger women, and his subjective intent.

The trial court excluded, over Mr. McKenzie's objection, four pieces of evidence: First, proffered testimony from Mr. McKenzie's father about his opinion of Mr. McKenzie good character and his knowledge of Mr. McKenzie's reputation for good character, as well as Mr. McKenzie's recent state of mind (App. 100-01 and R. 59 1-4.).); Second, a sermon recorded by Mr. McKenzie before the offense and consistent with his testimony about his loneliness and state of mind (App. 26.); Third, testimony from a government agent that Mr. McKenzie had no criminal record (App. 316-17); and Fourth, testimony about the penalties for child pornography (App. 313-14).

### C.    The excluded evidence would have been probative of Mr. McKenzie's state of mind.

The government was required to prove beyond a reasonable doubt that Mr. McKenzie arrived at the hotel with the intent to have sex with a minor. *See* 18 U.S.C. § 1594. If he intended to help a person (minor or adult) who was being pimped by her mother, then he did not commit a federal

crime. If he arrived with the intent to have sex with the tattooed and

pierced adult model who had been used for the advertisement by the

government, then he did not commit a federal crime. Thus, his specific

intent was a central question for the jury.

 "Relevancy is a very low threshold requiring only that the evidence

have '*any* tendency to make a fact more or less probable.'" *United States v.

Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021)(emphasis in *Cruz-Ramos*); *see also*

Fed. R. Evid. 401. Therefore, to be relevant, proffered evidence "need not

definitively resolve a key issue in the case," but rather "need only move the

inquiry forward to some degree." *Id*. Mr. McKenzie's state of mind was a

fact that was "of consequence" for determining the action, and the

excluded evidence of his character and intent tended to make the

allegations less probable.

At trial, Mr. McKenzie testified in his defense that he sought adult

prostitutes out of loneliness in the year leading up to his arrest.

(App. 411.) Just ten days prior to his arrest, Mr. McKenzie gave a recorded

sermon where he spoke sin, redemption, and loneliness. (App. 26.) That

evidence was relevant to refute the government's argument that

Mr. McKenzie's testimony was fabricated to excuse his defense.

Mr. McKenzie's father was also prepared to testify about

Mr. McKenzie's good character and his reputation for having good

character, and to the Defendant's lack of attraction to younger women or

girls. (App. 100-01 and (App. 100-01 and R. 59 1-4.) Yet the court excluded

all of it as not "relevant." (App. 115-16.)

### D. The excluded evidence would have been probative of Mr. McKenzie's good character.

The testimony of Mr. McKenzie's father about his opinion of

Mr. McKenzie's good character and his knowledge of Mr. McKenzie's

reputation for good character (R. 59) was both relevant and admissible.

*See* Fed. R. Evid. 404 and 405. The court erred by excluding this evidence.

Evidence of a defendant's character is classically relevant in a

criminal case. Indeed, it is so important that the Federal Rules of Evidence

specifically allow character evidence on a defendant's behalf even through

the rules generally prohibit using character evidence to attack a

defendant. The general prohibition on character evidence resides in Rule

404(a)(1): "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). But the rules then immediately create the exception for "a defendant … in a criminal case" by allowing that "a defendant may offer evidence of the defendant's pertinent trait." *See United States v. Navedo-Ramirez*, 781 F.3d 563, 569 (1st Cir. 2015) ("Rule 404(a) allows a criminal defendant to offer evidence of a pertinent character trait."). As to what is pertinent, "character evidence is normally admissible *per se* in aid of a defendant." *United States v. Jalbert*, 504 F.2d 892, 895 (1st Cir. 1974).

This rule comes not from the rules of evidence, but from far back in the common law itself. Whereas the government has long been prohibited from using character evidence to secure a verdict, "this line of inquiry firmly denied to the State is opened to the defendant because character is relevant in resolving probabilities of guilt." *Michaelson v. United States*, 335 U.S. 469, 476 (1948). A criminal defendant "may introduce affirmative testimony that the general estimate of his character is so favorable that the

jury may infer that he would not be likely to commit the offense charged."

*Michaelson*, 335 U.S. at 476. In fact, as the Supreme Court acknowledged in

*Michaelson*, such character evidence "alone, in some circumstances, may

be enough to raise a reasonable doubt of guilt and that in the federal

courts a jury in a proper case should be so instructed." *Michaelson*, 335

U.S. at 476.

In this case, the defense proffered testimony by his father about his

good character. As described in Defendant's offer or proof and in the

government's motion to exclude the testimony, (App. 100-01 and R. 59

1-4), that would have included both Mr. McKenzie's father's opinion of

the Defendant's good character and his reputation for the same.

Yet the court here did what has long been known to be simply and

emphatically wrong in a criminal case: it prohibited a defendant from

sponsoring evidence of his own good character. The government would

have been allowed to counter the character evidence, as Rules 404 and 405

allow. *See* Fed. R. Evid. 404(a)(2)(A); 405(a)-(b). But evidence of

Mr. McKenzie's good character and reputation were "per se" admissible

in his defense where the government accused him of a crime that involved bad character. *Jalbert*, 504 F.2d at 895. To exclude the character evidence was reversible error.

### E. The excluded evidence would have supported an entrapment defense.

In addition, the excluded evidence of state of mind was relevant to the predisposition prong of the entrapment defense. Excluded testimony about Mr. McKenzie's good character, his lack of criminal history, and the government's attempt to minimize penalties by invoking child pornography laws were all relevant to entrapment and their exclusion was error.

For purposes of entrapment, the inducement prong exists when "the governmental deception or instigation actually implants the criminal design in the defendant's mind." *Gamache*, 156 F.3d at 9. On the other hand, the predisposition prong—the principal element in the defense of entrapment—focuses on "whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the

opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (internal quotation omitted).

Factors to be considered in assessing whether a defendant was predisposed to commit a crime include: "(1) the character or reputation of the defendant; (2) whether the initial suggestion of criminal activity was made by the Government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant showed reluctance to commit the offense, which was overcome by the governmental persuasion; and (5) the nature of the inducement or persuasion offered by the Government." *Saemisch*, 18 F.4th at 61. The second, fourth, and fifth of these factors are also relevant to the improper inducement analysis. *Id.* "Thus, while improper inducement and lack of predisposition are two separate prongs, the same factual evidence will often be relevant to both prongs." *Id.* at 61–62; *see also Pérez-Rodríguez*, 13 F.4th at 18.

In this case, the second and third factors are unequivocally in favor of a finding of entrapment. The initial suggestion for criminal activity was first made by the government: it was a government agent who posted the

advertisement containing a photo of an adult on a website known to carry advertisements for adult prostitution, and the same government agent then shifted the discussion to claim that the adult in the photo was a 14-year-old child. And there has never been *any* suggestion that Mr. McKenzie was doing any criminal activity for profit.

The analysis then turns to the first, fourth, and fifth factors of the predisposition test. The proffered evidence went straight to the heart of "the character or reputation of the defendant" and was relevant under the first predisposition factor. Testimony about Mr. McKenzie's lack of criminal record, his good character, and his lack of attraction to young women or children were all relevant to his propensity to commit the offense. And the government's invocation of child pornography as somehow more serious than child prostitution was relevant to the issue of inducement. To the extent the court relied upon a lack of evidence to deny the entrapment instruction, that was an error of the court's making because it excluded that same evidence on relevance grounds.

**V.** **The court erred in entering a judgment that describes the conviction as a violation of 18 U.S.C. § 1591(a)(1), rather than a violation of 18 U.S.C. § 1594, which erroneously makes Mr. McKenzie ineligible for relief under the First Step Act.**

**A.** **Standard of review.**

Although rare, this Court reviews denials of motions to correct clerical errors in a judgment *de novo*. *United States v. Ranney*, 298 F.3d 74, 81 (1st Cir. 2002).

**B.** **The court's judgment should be amended to accurately reflect that Mr. McKenzie was not convicted of a violation of § 1591**

In 2018, Congress amended Title 18 to incorporate certain changes to revise how time credits are calculated for prisoners with a low risk of recidivism. *See generally*, The First Step Act, P.L. 115-391. Those changes now allow for prisoners to receive additional credit for time served for completing "evidence-based recidivism reduction programming" during their term of incarceration. 18 U.S.C. § 3632(d)(4)(A). However, certain broad swathes of the prison population are excluded from eligibility. 18 U.S.C. § 3632(d)(4)(D). Included in the list of ineligible prisoners are those "serving a sentence for a conviction under … [a]ny offense under chapter

77, relating to peonage, slavery, and trafficking in persons, **except for sections 1593 through 1596**." 18 U.S.C. § 3632(d)(4)(D)(XXvii) (bold added). Thus, a conviction under Section 1591 precludes a prisoner from receiving the benefit of the First Step Act, but a conviction under Section 1594 does not. *See* 18 U.S.C. § 3632(d)(4)(D).

Mr. McKenzie was convicted only of attempt. He was never convicted of violating § 1591. He could not be, because there was no actual child. The court ruled that "the judgment shall accurately describe the Defendant's conviction of Count One of the Indictment, ECF No. 14, as follows: 'Attempted Sex Trafficking of a Child, 18 U.S.C. § 1594(a), an attempt to violate 18 U.S.C. §§ 1591(a)(1), 1591(b)(2)." (R. 97, App. 14.) Yet the written judgment states Defendant is adjudicated guilty of "18 USC § 1591(a)(1), (b)(2) **and** 18 USC § 1594(a)." (R. 106, Add. 59; bold added.) Because the judgment states that Mr. McKenzie was convicted of a substantive offense under § 1591 "and" an attempt offense under § 1594(a), Mr. McKenzie has been incorrectly determined to be ineligible for the benefits of the First Step Act by the Bureau of Prisons.

Mr. McKenzie should receive First Step Act benefits, because Congress explicitly carved out §§ 1593, 1594, 1595, and 1596 in the statute. *See* 18 U.S.C. § 3632(d)(4)(D)(XXvii) (removing certain crimes from the First Step Act "**except for sections 1593 through 1596.**"). The entire text of Section 1594 consists of criminalizing the *attempt* to violate other sections. In excluding Section 1594, Congress could only have meant to exclude convictions for attempt rather than the completed offense. Congress made the rational decision that someone who *really* traffics a minor should be punished differently than someone convicted of attempting to traffic a fictional minor. Any other reading renders the exception a nullity.

In *United States v. Ahmed*, this Court confronted a similar problem: a defendant was found guilty of a conspiracy to commit heath care fraud but the judgment reflected a conviction for substantive fraud. *United States v. Ahmed*, 51 F.4th 12, 19 n.4 (1st Cir. 2022). This Court ordered a remand to permit the district court to correct the issue under Rule 36. *Ahmed*, 51 F.4th at 19 n.4., citing *United States v. Claudio*, 44 F.3d 10, 16–17 (1st Cir.

1995); *see also United States v. Davis*, 841 F.3d 1253, 1265 (11th Cir. 2016);

Fed. R. Crim. P. 36.

Mr. McKenzie requests that on remand the error in the judgment be corrected under Rule 36 to state he was convicted only for violation of 18 U.S.C. § 1594(a).

### C. Alternatively, this Court should state that the only offense was under 18 U.S.C. § 1594.

If this Court does not grant the relief of correcting the judgment, Mr. McKenzie asks that this Court state that a conviction under 18 U.S.C. § 1594 for attempt to violate 18 U.S.C. § 1591 is <u>not</u> legally equivalent to a conviction under 18 U.S.C. § 1591. Every decision Defendant has found which considered the issue has agreed with that principle. *See, e.g.*, *United States v. Warren*, 5 F.4th 1078, 1080-81 (9th Cir. 2021); *Noe v. True*, No. 21-1373, 2022 U.S. App. LEXIS 27777, at *24-26 (10th Cir. Oct. 5, 2022) (Applying *Warren*'s reasoning to §§ 841 and 846) (unpublished); *United States v. Phillips*, No. 13-286, 2022 U.S. Dist. LEXIS 218204, at *5-8 (E.D. La. Dec. 5, 2022) (Agreeing with *Warren*) (unpublished).

Although this Court has not addressed this issue, the Ninth Circuit has confronted it in *United States v. Warren*. That court concluded that conviction under 18 U.S.C. § 1594 for a conspiracy or attempt to violate 18 U.S.C. § 1591 does <u>not</u> make a defendant ineligible for First Step Act credits. *See Warren*, 5 F.4th at 1080-81.

The Ninth Circuit did not grant Warren's requested relief, however. Instead, the court held "although the judgment is not required to pinpoint the statute defining the substantive offense that is the object of the conspiracy, neither is it error for the judgment to include such a reference." *Warren*, 5 F.4th at 1081 n.2. The court, however recognized that "because of the wording of the judgment, the Bureau of Prisons ("BOP") erroneously concluded that [Defendant] has a conviction under 18 U.S.C. § 1591, which makes him ineligible for certain benefits and privileges. […] [Defendant] now has the opportunity to present to the BOP this opinion, which construes the judgment to reflect that Defendant committed a single offense under 18 U.S.C. § 1594(c)." *Warren*, 5 F.4th at 1081 n.2.

This case differs from *Warren* in one respect: The written judgment does not match the court's order. The judgment states Mr. McKenzie was convicted of both offenses (using "and"), but the trial court's order states the judgment must say Mr. McKenzie was convicted of a single count of "18 U.S.C. § 1594(a), an attempt to violate 18 U.S.C. §§ 1591(a)(1), 1591(b)(2)." It is that clerical error which has worked mischief with Mr. McKenzie's right to First Step Act credits, and this Court should correct it.

If this Court does not grant Mr. McKenzie's preferred relief of correcting the judgment, then he asks in the alternative for the relief granted in *Warren*: a clear statement that his conviction was for "a single offense under § 1594" and thus <u>not</u> also an offense under § 1591. *See Warren*, 5 F.4th at 1081 n.2

## CONCLUSION

For all the foregoing reasons, Appellant respectfully requests that

this Court reverse the judgment of conviction.

Respectfully submitted,
/s/ Jeremiah R. Newhall
*Attorney for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

  X    this brief contains 9846 words as shown by Microsoft Word Office 365 in preparing this brief.

0. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(5) because:

  X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Palatino Linotype font.

/s/ Jeremiah R. Newhall
Attorney for Defendant-Appellant

Dated: March 26, 2025

# PROOF OF SERVICE

The undersigned attorney hereby certifies that he has caused a copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system and served, by the electronic filing system, upon all attorneys of record, on this day March 26, 2025.

BY:   /s/ Jeremiah R. Newhall
Jeremiah R. Newhall

No. 24-2087

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

United States of America,                                    Plaintiff-Appellee,


    v.

Dimitri McKenzie,                          Defendant-Appellant.



_____


Appeal from the United States District Court
For the District Court of Massachusetts
The Honorable William G. Young, Judge.
_____


APPELLANT'S REQUIRED ADDENDUM
_____


Jeremiah R. Newhall
*Attorney for Defendant-Appellant*
Newhall Law Firm
1630 Empire Blvd., Suite 3
Webster, NY 14580
585-865-5441
[Jeremiah@newhallfirm.com](mailto:Jeremiah@newhallfirm.com)

No. 24-2087

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

United States of America,                                    **Plaintiff Appellee**


     v.

Dimitri McKenzie,                              **Defendant Appellant**


_____

Appeal from the United States District Court
For the District Court of Massachusetts
The Honorable William G. Young, Judge.
_____

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 28**

The undersigned, counsel for Defendant-Appellant, Alexander Fermín-García, hereby states that all the materials required by Circuit Rule 28 are included in the attached Addendum to this brief.

                          BY:    /s/ Jeremiah R. Newhall
                                 Jeremiah R. Newhall
                                 *Attorney for Defendant-Appellant*

Dated: March 26, 2025

# ADDENDUM TABLE OF CONTENTS

1. Dkt 106 Amended Judgment..................................................................60
2. Dkt 98 Trial Excerpts pgs 7-11 (Court Ruling) ....................................76
3. Dkt 99 Trial Excerpts pgs 72-73 (Court Ruling) .................................81
4. Dkt 100 Trial Excerpts pgs 135-37 (Court Ruling) .............................83

AO 245B (Rev. 02/18)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**v.**<br><br>DIMITRI McKENZIE | )    **JUDGMENT IN A CRIMINAL CASE**<br>)<br>)<br>)    Case Number: **1**   **22**   **cr**   **10312**   **- 001**   **- WGY**<br>)<br>)    USM Number:   29876-510<br>)<br>)    <u>Alyssa Thrasher Hackett and Jennfer Sunderland</u><br>)    Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
    which was accepted by the court.

☑ was found guilty on count(s)    1 _____
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 1591(a)(1),<br>(b)(2) and<br>18 USC § 1594(a) | Attempted Sex Trafficking of a Child | 11/02/22 | 1 |

     The defendant is sentenced as provided in pages 2 through    8    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/9/2024
_____
Date of Imposition of Judgment

/s/ William G. Young
_____
Signature of Judge

The Honorable William G. Young
Judge, U.S. District Court
_____
Name and Title of Judge

11/18/2024
_____
Date

AO 245B (Rev.02/18)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  8

DEFENDANT: DIMITRI McKENZIE
CASE NUMBER:  1  22  cr   10312   – 001 – WGY

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:   126   month(s)

Defendant shall receive credit for time served from 11/2/2022 - 11/10/2022 and 6/10/2024 to the present.

☑  The court makes the following recommendations to the Bureau of Prisons:

The defendant be designated to Devens.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at  _____  ☐ a.m.  ☐ p.m.  on  _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on  _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

61

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    8

DEFENDANT:   DIMITRI McKENZIE
CASE NUMBER:   **1  22  cr   10312   – 001 – WGY**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :              **60**   month(s)

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     - ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___8___

DEFENDANT: DIMITRI McKENZIE
CASE NUMBER:    1  22  cr  10312  - 001 - WGY

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____    Date  _____

AO 245B(Rev. 02/18)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___8___

DEFENDANT:  DIMITRI McKENZIE
CASE NUMBER:  1  22  cr   10312   - 001 - WGY

# SPECIAL CONDITIONS OF SUPERVISION

1.  You must participate in a mental health treatment program as directed by the Probation Office.

2.  Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, you shall register as a sex offender not later than three business days (from release or sentencing, if granted probation). You will keep the registration current, in each jurisdiction where you reside, are employed or are a student. You must, not later than three business days after each change in name, residence, employment, or student status, appear in person at least one jurisdiction in which you are registered and inform that jurisdiction of all changes in the information. Failure to do so may not only be a violation of this condition but also a new federal offense punishable by up to 10 years' imprisonment. In addition, you must read and sign the Offender Notice and Acknowledgment of Duty to Register as a Sex Offender per the Adam Walsh Child Protection and Safety Act of 2006 form.

3.  You must participate in a sexual specific evaluation or sex offender specific treatment, conducted by a sex offender treatment provider, as directed and approved by the Probation Office. The treatment provider shall be trained and experienced in the treatment of sexual deviancy and follow the guideline practices established by the Association for the Treatment of Sexual Abusers (ATSA). The sexual specific evaluation may include psychological and physiological testing which may include polygraph testing and the Visual Reaction Time Assessment (e.g. ABEL screen). You must disclose all previous sex offender or mental health evaluations to the treatment provider.

4.  You must submit to periodic polygraph testing as a means to ensure that you are in compliance with the requirements of your supervision or treatment program. When submitting to a polygraph exam, you do not waive your Fifth Amendment rights, and your exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

5.  You must allow the installation of computer internet monitoring software on approved internet capable devices but may still use a computer for work purposes that has been previously approved by the Probation Office. The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. You must not attempt to remove or otherwise defeat such systems and must allow the Probation Office to examine such computer and receive data from it at any reasonable time.

6.  You must advise anyone using the monitored internet capable devices that those devices are being monitored by the Probation Office.

7.  You must not possess or use any computer or internet-capable device without prior approval from the Probation Office. Any such device should not be used to knowingly access or view sexually explicit materials as defined in 18 U.S.C. §2256 (2)(A).

8.  You must disclose all account information relative to internet access, social networking, and email, including user-names and passwords, to the Probation Office. You must also, if requested, provide a list of all software/hardware on your computer, as well as telephone, cable, or internet service provider billing records and any other information deemed necessary by the Probation Office to monitor your computer usage.

9.  You must provide the probation officer with access to any requested financial information for purposes of monitoring compliance with the imposed computer access/monitoring conditions, including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

AO 245B (Rev. 02/18)  Judgment in a Criminal Case
Sheet 4D — Probation

| | Judgment—Page | 6 | of | 8 |

DEFENDANT: DIMITRI McKENZIE
CASE NUMBER: 1 22 cr 10312 - 001 - WGY

## SPECIAL CONDITIONS OF SUPERVISION

10.  You must not knowingly have direct contact, or contact through a third party, with children under the age of 18, unless previously approved by the Probation Office, or in the presence of a responsible adult who has been approved by the Probation Office, and who is aware of the nature of your background and current offense.

11.  You must consent to third party disclosure to any employer or potential employer concerning any computer-related restrictions that are imposed upon you, unless excused by the probation officer. You are prohibited from being employed in any capacity that may cause you to come in direct contact with children, except under circumstances approved in advance by the supervising probation officer. In addition, you must not participate in any volunteer activity that may cause you to come into direct contact with children, except under circumstances approved in advance by the probation officer. Contact is defined as any transaction occurring face to face, over the telephone, via mail, over the internet, and any third-party communication.

12.  Prior to accepting any form of employment, you must seek the approval of the Probation Office, in order to allow the Probation Office the opportunity to assess the level of risk to the community you may pose if employed in a particular capacity.

13.  You shall be required to contribute to the costs of evaluation, treatment, programming, and/or monitoring (see Special Conditions 1 and 3-5), based on the ability to pay or availability of third-party payment.
*For All Cases in Which Monetary Penalties are Imposed* (impose all 3)

14.  You must pay the balance of any fine or restitution imposed according to a court-ordered repayment schedule.

15.  You are prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

16.  You must provide the Probation Office access to any requested financial information, which may be shared with the Asset Recovery Unit of the U.S. Attorney's Office.

AO 245B (Rev. 02/18)    Judgment in a Criminal Case
              Sheet 5 — Criminal Monetary Penalties

Judgment — Page   __7__   of   __8__

DEFENDANT:   DIMITRI McKENZIE
CASE NUMBER:   **1  22  cr  10312  - 001 - WGY**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $     0.00 | $     0.00 | |

☐   Restitution amount ordered pursuant to plea agreement   $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   the interest requirement is waived for the   ☐  fine   ☐  restitution.

    ☐   the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Judgment — Page   8   of   8  

DEFENDANT:  DIMITRI McKENZIE
CASE NUMBER:   **1 22 cr 10312 - 001 - WGY**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $   100.00   due immediately, balance due

       ☐   not later than  _____ , or
       ☐   in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

      Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

```
 1                  UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MASSACHUSETTS (Boston)

 3                                   22-cr-10312-wgy-1

 4

 5

 6

 7

 8   ****************************************
                                            *
 9   United States vs. Dimitri McKenzie     * JUDGE'S FINDINGS
                                            *
10   ****************************************

11

12

13

14

15        BEFORE:  Honorable Judge William G. Young

16

17

18                     Richard H. Romanow
19                    Official Court Reporter
                    United States District Court
20                      1 Courthouse Way
                    Boston, Massachusetts 02210
21
                    Wednesday, October 9, 2024
22

23

24

25
```

1          THE COURT:  Mr. Dimitri McKenzie, in consideration

2    of the principles of 18 United States Code, Section

3    3553(a), the information from the government, the

4    probation office, your attorney, and yourself, this

5    Court sentences you to 126 months in the custody of the

6    United States Attorney General -- 10 years, 6 months.

7    The Court thereafter places you on supervised release

8    for a period of 5 years.  The, um -- with all the

9    general conditions of supervised release and each of the

10   special conditions set forth in Pages 28 through 30 of

11   the presentence report.  The Court imposes no fine due

12   to your inability to pay a fine.  The Court imposes the

13   $100 special assessment as required by the law.

14          It appears that, um, he is deemed indigent and

15   therefore the $5,000 assessment is not imposed.

16          Let me explain the sentence to you.

17          This is truly a horrific crime.  I hope this has

18   come home to you.  You say you have reflected on it.  I

19   hope that's so.  This is not a situation where this

20   Court feels constrained by the Congressional

21   determination that there should be a mandatory minimum

22   sentence, though of course I respect that and I follow

23   it as I am required to.  This is an appropriate

24   sentence.  This is the sentence that you ought have for

25   the conduct that you knowingly engaged in.  It is a fair

1    and a just sentence and the Court has no hesitancy in

2    imposing it.

3         Now you have the right to appeal from any findings

4    or rulings the Court has made against you.  Should you

5    appeal and should your appeal be successful in whole or

6    in part and the case remanded, you'll be resentenced

7    before another judge.  Ms. Hackett, if an appeal is

8    decided upon, you want transcript, seek it from this

9    session of the court because I'll turn it around right

10   away.

11        Do you understand?

12        MS. HACKETT:  Yes, your Honor.

13        THE COURT:  Thank you.  That is the sentence of

14   the Court.

15        He shall have credit towards the service of that

16   sentence from -- well he was detained from November 2nd

17   to November 10th, he'll have credit for those days, and

18   from June 10th -- that was in 2022, excuse me, and from

19   June 10th, 2024 until the present, because he's been in

20   custody.

21        MS. HACKETT:  I have a couple of requests for the

22   judgment, your Honor.

23        THE COURT:  Please.

24        MS. HACKETT:  I wanted to ask if your Honor could

25   make a judicial recommendation that Mr. McKenzie serve

1    his sentence at Devens.  My understanding is that they

2    have facilities that are conducive to people who have

3    been labeled as a sex offender.  Also, Mr. McKenzie is

4    very close to his family, he receives a lot of support,

5    and it's important for him, for his mental health -- and

6    his family is located in Massachusetts, that they would

7    be able to travel to Fort Devens.

8           THE COURT:  I will so recommend.

9           MS. HACKETT:  And the second request I have is

10   that his judgment would clearly indicate that he's been

11   convicted of attempted sex trafficking.  I would ask

12   that the charge listed, the 18 USC 1594, that's very

13   important because a charge of 1591 is an exclusion under

14   the First Step Act credits which encourage a person to

15   receive recidivism-reduction programming.

16          THE COURT:  Well isn't that inconsistent though

17   with what I have ruled that, um, he is guilty under

18   1591(d)(2)?

19          MS. HACKETT:  I believe your Honor ruled that the

20   appropriate sentencing guideline was the guideline 1591.

21          THE COURT:  I did.

22          MS. HACKETT:  Which I think is a different issue

23   rather than what specific charge he was convicted of by

24   this jury.  There is a difference between whether or not

25   that guideline should apply and whether or not he has

1    been convicted of a charge of 1591.

2         1591 would not have the same jury instructions as

3    1594.  1594 would require that the --

4         THE COURT:  Here's how we're going to deal with

5    that, and I respect your argument.  And this is

6    something that I need to reflect on and research more

7    than I have done prior to coming on the bench.

8         So you must make a -- since the issue is the

9    applicability of the First Step Act, make a motion that

10   the First Step Act apply to Mr. McKenzie.

11        And I take it the government disagrees with this?

12        MS. CUMMINGS:  Yes, your Honor, I'm --

13        THE COURT:  I'm not asking for argument now.

14        MS. CUMMINGS:  Certainly, your Honor.

15        THE COURT:  Because I can't say I'm blindsided,

16   I'm just being transparent, that I've prepared myself

17   for the sentencing.  This collateral consequence is a

18   matter of some significance.  It can be resolved as a

19   matter of law.  You make the motion, support the motion,

20   the usual period for the government to respond, and the

21   Court will make a ruling.  And if it requires some

22   express amendment to the judgment, I will amend it.  But

23   I'm not going to say any more at this time because I

24   need to reflect on it.

25        MS. HACKETT:  I will do that, thank you.

1    THE COURT:  All right.

2    He's remanded to the custody of the marshals.

3 We'll recess.

4    THE CLERK:  All rise.

5    (Ends, 3:40 p.m.)

```
MIME-Version:1.0
From:ECFnotice@mad.uscourts.gov
To:CourtCopy@localhost.localdomain
Bcc:
--Case Participants: Torey B. Cummings (caseview.ecf@usdoj.gov, emma.jones@usdoj.gov,
mahlet.ayana@usdoj.gov, nicole.valila@usdoj.gov, steven.murnane@usdoj.gov,
torey.cummings@usdoj.gov, usama.ecf@usdoj.gov), Alyssa Thrasher Hackett (ahackett@hackett-
law.com), David G. Tobin (caseview.ecf@usdoj.gov, david.tobin@usdoj.gov,
julia.gelman@usdoj.gov, usama.ecf@usdoj.gov), Jennifer A. Sunderland
(jsunderland@sunderland-law.com), Judge William G. Young (jennifer_gaudet@mad.uscourts.gov,
william_young@mad.uscourts.gov)
--Non Case Participants: Martha Victoria (martha_victoria@map.uscourts.gov)
--No Notice Sent:

Message-Id:<11085519@mad.uscourts.gov>
Subject:Activity in Case 1:22-cr-10312-WGY USA v. McKenzie Order on Motion for Miscellaneous
Relief
```
Content-Type: text/html

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

### Notice of Electronic Filing

The following transaction was entered on 11/7/2024 at 8:06 AM EST and filed on 11/7/2024

| | |
|---|---|
| **Case Name:** | USA v. McKenzie |
| **Case Number:** | 1:22-cr-10312-WGY |
| **Filer:** | |
| **Document Number:** | 97(No document attached) |

**Docket Text:**
**Judge William G. Young: ELECTRONIC ORDER entered granting in part and denying in part [95] Motion to Request Judgment Language as to Dimitri McKenzie (1).**

**Defendant's Motion to Request Judgment Language, ECF No. [95], is ALLOWED in part and DENIED in part. The motion is allowed in part only to the extent that the judgment shall accurately describe the Defendant's conviction of Count One of the Indictment, ECF No. [14], as follows: "Attempted Sex Trafficking of a Child, 18 U.S.C. � 1594(a), an attempt to violate 18 U.S.C. �� 1591(a)(1), 1591(b)(2)." The Court takes no position as to whether the First Step Act applies to this offense. All other and further relief is DENIED."**

**(Gaudet, Jennifer)**

**1:22-cr-10312-WGY-1 Notice has been electronically mailed to:**

David G. Tobin    David.Tobin@usdoj.gov, CaseView.ECF@usdoj.gov, julia.gelman@usdoj.gov,

usama.ecf@usdoj.gov

Jennifer A. Sunderland    jsunderland@sunderland-law.com

Torey B. Cummings    torey.cummings@usdoj.gov, CaseView.ECF@usdoj.gov, Nicole.Valila@usdoj.gov, USAMA.ECF@usdoj.gov, emma.jones@usdoj.gov, mahlet.ayana@usdoj.gov, steven.murnane@usdoj.gov

Alyssa Thrasher Hackett    ahackett@hackett-law.com, AHackett@Hackett-law.com

**1:22-cr-10312-WGY-1 Notice will not be electronically mailed to:**

1          THE COURT:  All right.  Thank you.

2

3          (In open court.)

4          THE COURT:  I believe that we are the first to

5     impanel.  Let me, um, go over the various pending

6     matters that are before the Court.

7          (Pause.)

8          THE COURT:  There's proposed voir dire.  If I

9     don't ask it, your rights are saved.  And if I do, I do.

10         The defendant has moved to exclude the phone

11    chain-of-custody form, there's the business about prior

12    detention on that.  I would imagine that to be --

13         MR. TOBIN:  Yes, your Honor, we don't anticipate

14    introducing that document.

15         THE COURT:  So it's moot?

16         MR. TOBIN:  It's moot.

17         THE COURT:  All right, denied as moot.

18         The sentencing?  I'm not able, at this stage, to

19    rule on it.  I think the argument, Ms. Hackett, in

20    support of it is insufficient, but, um -- but we'll

21    proceed.  Don't get into any sentencing without asking

22    to approach the sidebar.

23         The defendant, and the government counters this,

24    there's a motion in limine to admit evidence of the

25    defendant's state of mind, and three matters have been

1  set forth there.  None of them is relevant.  They're all

2  excluded.  The defendant's rights are saved.

3      (Pause.)

4      Actually let me go back to what questions I will

5  ask of the jury during voir dire.

6      So we'll clear, I will ask whether, um -- I will

7  ask a question about the nature of the allegations in

8  the case.  I will ask whether they're more inclined to

9  believe law enforcement officials.  I will ask whether,

10  um -- a more general question about sexual abuse.  I

11  don't propose to ask the question about someone being

12  religious, especially given my rulings.

13      But, um, Ms. Hackett, you ask that he's paid for

14  sex with adults in the past.  What I -- I'm not clear

15  that that would be admissible in any event, but maybe.

16  Do you want me to ask that?

17      MS. HACKETT:  Yes.  I anticipate that several text

18  communications are going to be admitted into evidence

19  from the day of the arrest showing a relationship to

20  adult prostitution in the past and, um, also an attempt

21  that day.  And so if it's going -- I don't think there's

22  any question about whether or not he has used an adult

23  prostitute in the past, I think that that's certainly

24  going to come in, and therefore I think it's important

25  that, um, there is some question related to bias and use

1  of adult prostitution.

2      THE COURT:  I would propose to handle that not in

3  inquiring of the venire as a whole, but when I give my

4  precharge and go over the elements and simply say,

5  "You're going to hear some evidence that's not the

6  charge here, that's admitted, just so you get a better

7  understanding of the situation.  You're not to hold that

8  against him because he's here" -- and I will have

9  explained the attempt charge that is the sole charge

10  that's before the jury.

11      That would, I think, handle it better.

12      MS. HACKETT:  May I ask myself, um, you know "You

13  may hear it that Mr. McKenzie has paid for sex in the

14  past"?

15      THE COURT:  In other words I don't mention it, but

16  you do in the opening?

17      MS. HACKETT:  No, I was going to ask that in the

18  voir dire process.

19      THE COURT:  No, you may not.

20      MS. HACKETT:  Okay.  I would like to have a more

21  specific question because I think it's essentially a 404

22  issue about whether or not he, um, has committed a prior

23  bad act, and given that it's likely to come in, it's so

24  charged, the fact that he previously paid for it.

25      THE COURT:  Now because this was a sting, you are

asking me to give an entrapment charge going in, right?

MS. HACKETT:  Yes.

THE COURT:  And that -- and I'm talking aloud here, that does bear on his state of mind, so that would incline me to ask that question.

MR. TOBIN:  Your Honor, we have no particular issue with regard to a question on the use of adult prostitutes, and I know you haven't solicited comment, but at some point we would like to talk about the instruction, the preliminary instruction on entrapment, which we think is most unwarranted.

THE COURT:  Um, thank you, I'll get back to that.

(Pause.)

THE COURT:  Well let's go right to entrapment.

MS. HACKETT:  Your Honor, before we move on, is it possible that I be heard on Question Number 4, the religious question?

THE COURT:  Yes.

MS. HACKETT:  So there's a possibility that Mr. McKenzie will testify, and if he were to testify, it's very likely that he would explain the importance and the impact of his religion on the decision that he made that day.  If he were to testify that way, I would again ask that his father be permitted to testify about --

1          THE COURT:  It's advisory.  I've made my ruling.

2     I don't know what's going to happen.  We'll see.

3          MS. HACKETT:  Just in terms of the voir dire

4     Question, I --

5          THE COURT:  You're not asking it.

6          All right.  So as to the entrapment, Mr. Tobin, I

7     do propose that, um -- to give so much of what

8     Ms. Hackett wants as an entrapment charge that is the

9     first paragraph, and that's it, because the rest of it

10    will depend upon how the case plays out.

11         MR. TOBIN:  I'm sorry, your Honor, could we just

12    look at that?

13         THE COURT:  Yes.  But the first paragraph seems

14    accurately to set it forth.

15         And looking ahead, Ms. Hackett, I do not define

16    "reasonable doubt" and, um, which is also approved by

17    the First Circuit, and I'm not going to define it here.

18    But I'm going to mention it loudly, and frequently.

19         (Laughter.)

20         THE COURT:  Well I don't mean that flippantly,

21    but, um, I think that conveys the idea.

22         MR. TOBIN:  Going back to entrapment, your Honor,

23    it is my understanding that there has to be some basis

24    in fact in the evidence that would suggest a call for an

25    entrapment instruction before or after.

1   A.    Correct.

2   Q.    And you didn't take out the wrist tattoo?

3   A.    And this -- and again this was kind of a short

4   period of time.  When we get a specific request like

5   that, we don't have a -- we don't have a lot of time to

6   spend on a picture because he seemed very anxious to --

7   he kept following up -- it seemed like he was following

8   up to try to see where that picture was.  So we didn't

9   have a lot of time.  We actually had to contact the

10   decoy, who was in another state, to ask her for that

11   picture.  And so we really didn't have a lot of time to

12   invest in making that picture, um, with some of the

13   things you mentioned, um, to do those things.

14   Q.    Well before November 2nd of 2022, you had taken

15   several pictures of these decoy models, right?

16   A.    Yes.

17   Q.    And as part of the preparation for the operation,

18   you had pictures available, just not this one, right?

19   A.    Yes.

20   Q.    After, um, Mr. McKenzie was arrested, did you

21   check to see if he had ever been arrested for anything

22   before?

23        MS. CUMMINGS:  Objection.

24        THE COURT:  Would you ask the question again.

25   Q.    After Mr. McKenzie was arrested, you checked to

```
 1    see if he had ever been arrested before, is that right?
 2         THE COURT:  And you object to that?
 3         MS. CUMMINGS:  Yes, your Honor.
 4         THE COURT:  Sustained.
 5         MS. HACKETT:  May we approach?
 6         THE COURT:  I don't think it's necessary.
 7         (Pause.)
 8    Q.    I want to ask you about context.  And I want to,
 9    um, ask you about the phone call -- excuse me, about the
10    audio recording we listened to previously, um, that's
11    been marked as Exhibit 13.  Although it is a chalk.
12         During your phone -- your -- excuse me.
13         During your conversation with Mr. McKenzie at the
14    hotel, um, you asked him to show you money, is that
15    right?
16    A.    Yes.
17    Q.    And he did show you money?
18    A.    Correct.
19    Q.    All right.  And you also asked him specifically
20    about whether he was "good with protection," right?
21    A.    Yes.
22    Q.    But you didn't ask him to show you condoms?
23    A.    No.
24    Q.    And it's generally not common for a person to show
25    condoms before they enter a hotel for a commercial sex
```

only time in the whole proceeding where you stand up in
the courtroom and we all look at you.  And then he'll
read it out, because it reads out like a natural English
sentence or a sentence in English.  And then he'll say,
"Madam Forelady, is that your verdict?  Ladies and
gentlemen of the jury, is that your verdict?"

If as you stand there each one of you is satisfied
with the consciousness of your duty faithfully
performed, you will have done what's required of you.
The word "verdict" comes from two Latin words, they mean
"To speak the truth," and that is what is asked of you
at this time, to speak the truth about these matters.

Now I may have left something out, I may have
misstated something, and the lawyers get a chance to
bring that to my attention now.

Counsel.


AT THE SIDEBAR

THE COURT:  I thought that was pretty good.  We'll
start with the government.

MS. CUMMINGS:  We're satisfied, your Honor.

MS. HACKETT:  The defendant wishes to renew the
objections it made in writing earlier today and I --

THE COURT:  Well I want to be sure -- and this is
really to protect you under the First Circuit precedent,

```
 1  I have read all of that, but I'm not so sure that that
 2  protects your rights.  So just briefly articulate it.
 3       MS. HACKETT:  Sure.  Let me be specific.  The
 4  defendant objects to the, um, attempted sex-trafficking
 5  instruction, um, we believe that the appropriate
 6  instruction is the one that we filed with the Court.
 7       THE COURT:  And that is that I added in the
 8  "reckless disregard"?
 9       MS. HACKETT:  Yes, that you added the "reckless
10  disregard."
11       THE COURT:  I'm satisfied.
12       Go ahead.
13       MS. HACKETT:  And we've also asked for an
14  additional instruction about the substantial steps
15  "strongly corroborating" if it's the only evidence of
16  intent.
17       THE COURT:  Well I think I gave it in substance,
18  but I concede to you I did not use the word "strongly."
19  I'm satisfied with the instruction.  Your rights are
20  saved.
21       Is that it?
22       MS. HACKETT:  The defendant also believes that any
23  entrapment instruction would have been appropriate under
24  the facts of this case.
25       THE COURT:  Oh, my heavens, I bent over backwards.
```

```
1    But your rights are saved.  I'm fully satisfied.

2         MS. HACKETT:  And in addition, just in the portion

3    of your instruction related to "affecting interstate

4    commerce," you said that, um --

5         THE COURT:  The internet was -- in essence, the

6    internet is okay?

7         MS. HACKETT:  You used the example that the

8    government provided in its closing.

9         THE COURT:  Well it wasn't their example, that was

10   the evidence.

11        MS. HACKETT:  Right, but I do object to using the

12   example, that is exactly what the government is arguing,

13   essentially taking off the table the "affecting

14   interstate commerce."

15        THE COURT:  No, it's not, they don't have to

16   believe it.  But in any event, it's the only evidence in

17   the case.  Frankly, in your closing I didn't understand

18   how going to the bank and getting money could affect

19   interstate commerce, that could be completely local.

20   But in any event, I'm responsible for it and I stand on

21   it.

22        Very well.

23

24        (In open court.)

25        THE COURT:  I'm going to call out the names of the
```

 1    June 10th, 2024 until the present, because he's been in

 2    custody.

 3         MS. HACKETT:  I have a couple of requests for the

 4    judgment, your Honor.

 5         THE COURT:  Please.

 6         MS. HACKETT:  I wanted to ask if your Honor could

 7    make a judicial recommendation that Mr. McKenzie serve

 8    his sentence at Devens.  My understanding is that they

 9    have facilities that are conducive to people who have

10    been labeled as a sex offender.  Also, Mr. McKenzie is

11    very close to his family, he receives a lot of support,

12    and it's important for him, for his mental health -- and

13    his family is located in Massachusetts, that they would

14    be able to travel to Fort Devens.

15         THE COURT:  I will so recommend.

16         MS. HACKETT:  And the second request I have is

17    that his judgment would clearly indicate that he's been

18    convicted of attempted sex trafficking.  I would ask

19    that the charge listed, the 18 USC 1594, that's very

20    important because a charge of 1591 is an exclusion under

21    the First Step Act credits which encourage a person to

22    receive recidivism-reduction programming.

23         THE COURT:  Well isn't that inconsistent though

24    with what I have ruled that, um, he is guilty under

25    1591(d)(2)?

1          MS. HACKETT:  I believe your Honor ruled that the

2     appropriate sentencing guideline was the guideline 1591.

3          THE COURT:  I did.

4          MS. HACKETT:  Which I think is a different issue

5     rather than what specific charge he was convicted of by

6     this jury.  There is a difference between whether or not

7     that guideline should apply and whether or not he has

8     been convicted of a charge of 1591.

9          1591 would not have the same jury instructions as

10    1594.  1594 would require that the --

11         THE COURT:  Here's how we're going to deal with

12    that, and I respect your argument.  And this is

13    something that I need to reflect on and research more

14    than I have done prior to coming on the bench.

15         So you must make a -- since the issue is the

16    applicability of the First Step Act, make a motion that

17    the First Step Act apply to Mr. McKenzie.

18         And I take it the government disagrees with this?

19         MS. CUMMINGS:  Yes, your Honor, I'm --

20         THE COURT:  I'm not asking for argument now.

21         MS. CUMMINGS:  Certainly, your Honor.

22         THE COURT:  Because I can't say I'm blindsided,

23    I'm just being transparent, that I've prepared myself

24    for the sentencing.  This collateral consequence is a

25    matter of some significance.  It can be resolved as a

1    matter of law.  You make the motion, support the motion,

2    the usual period for the government to respond, and the

3    Court will make a ruling.  And if it requires some

4    express amendment to the judgment, I will amend it.  But

5    I'm not going to say any more at this time because I

6    need to reflect on it.

7         MS. HACKETT:  I will do that, thank you.

8         THE COURT:  All right.

9         He's remanded to the custody of the marshals.

10   We'll recess.

11        THE CLERK:  All rise.

12        (Ends, 3:40 p.m.)

13

14              C E R T I F I C A T E

15

16        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

17   hereby certify that the forgoing transcript of the

18   record is a true and accurate transcription of my

19   stenographic notes, before Judge William G. Young, on

20   Wednesday, October 9, 2024, to the best of my skill and

21   ability.

22

23   /s/ Richard H. Romanow 11-21-24

     _____
24   RICHARD H. ROMANOW  Date

25